IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Tony Rush, | ) Case No. 8:10-1937-RMG-JDA |
| | ) |
| Plaintiff, | ) **REPORT AND RECOMMENDATION** |
| | ) **OF MAGISTRATE JUDGE** |
| v. | ) |
| | ) |
| Dennis Patterson, individually and as Director of Operations; Warden McKither Bodison; Fred Thompson, A/W; James Blackwell, DHO; Richard Turner, DHO; Warden Michael McCall, each in his individual capacity, | ) |
| | ) |
| Defendants. | ) |

This matter is before the Court on a motion for summary judgment filed by Defendants [Doc. 46] and a cross-motion for summary judgment filed by Plaintiff [Doc. 55]. Plaintiff is proceeding pro se and brings this civil rights action pursuant to 42 U.S.C. § 1983. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and to submit findings and recommendations to the District Court.

Plaintiff filed this action on July 27, 2010, alleging violations of his due process rights. [Doc. 1 at 2.] On March 17, 2011, Defendants filed a motion for summary judgment. [Doc. 46.] On March 18, 2011, the Court issued an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. [Doc. 47.] Also on March 18, 2011, Defendants filed a supplement to their

motion for summary judgment. [Doc. 49.] On April 22, 2011, Plaintiff filed a document entitled "Plaintiff's Cross-Move for Partial Summary Judg[]ment," which Plaintiff filed in response to Defendants' motion for summary judgment.[1] [Doc. 55.] On May 9, 2011, Defendants filed a response in opposition to Plaintiff's cross-motion for partial summary judgment [Doc. 60], and Plaintiff filed a reply to Defendants' response on May 20, 2011 [Doc. 62]. Accordingly, Plaintiff's and Defendants' motions are now ripe for review.

## BACKGROUND

At all times relevant to this action, Plaintiff was in the custody of the South Carolina Department of Corrections ("SCDC"), and Plaintiff is currently housed at the Perry Correctional Institution ("PCI"). [Doc. 1 at 2.] Plaintiff alleges that on February 22, 2008, while housed at Lieber Correctional Institution ("LCI"), he was served with an institutional charge of "(804) homocide" under SCDC Policy OP-22.14. [*Id.* at 3, ¶ 3.] On March 10, 2008, a disciplinary hearing was held before Defendant James Blackwell ("Blackwell"). [*Id.* ¶ 4.] Plaintiff contends Blackwell disregarded Plaintiff's evidence, which showed it was impossible for him to have committed the alleged crime. [*Id.* at 3–4, ¶¶ 7–8.] Plaintiff was found guilty, and his sanctions included the loss of canteen, telephone, and visitation privileges for 180 days; 360 days of disciplinary detention; and the loss of thirty days good time credits. [*Id.* at 4, ¶ 9.] Plaintiff appealed the decision, and the Administrative Law Court ordered a reversal of the homicide conviction and the order appealed from and

---

[1] In his "Cross-Move for Partial Summary Judg[]ment," Plaintiff indicates he is responding to Defendants' motion for summary judgment by way of a cross-motion for summary judgment. [Doc. 55.] He asks the Court to grant partial summary judgment as to the liability of Defendants Patterson, Bodison, Thompson, Blackwell, Turner, and McCall for damages for the denial of due process. [*Id.*] In an attached memorandum in support, Plaintiff addresses Defendants' arguments in support of their motion for summary judgment. [Doc. 55-1.]

remanded the matter for rehearing. [*Id.* at 5, ¶ 15.] On May 5, 2009, Plaintiff received an order from Defendant Dennis Patterson ("Patterson"), overturning the conviction, uplifting all sanctions, and approving a rehearing. [*Id.* ¶ 16.]

On May 15, 2009, Plaintiff was served again with an institutional charge of "(804) homocide" under SCDC OP-22.14. [*Id.* at 5–6, ¶ 19.] On the same day he received the charge, Plaintiff submitted a Request to Staff form to Defendant Richard Turner ("Turner"), requesting several inmates and SLED investigators to be witnesses on his behalf. [*Id.* at 6, ¶ 20.] On May 18, 2009, a hearing on the charge was held before Turner. [*Id.* ¶ 21.] Plaintiff alleges Turner denied Plaintiff's initial written and subsequent verbal requests to have the witnesses present at the hearing [*id.* ¶ 22] and denied his request to produce documentary evidence on his behalf to prove his innocence [*id.* ¶ 23]. Plaintiff further alleges that Defendant McKither Bodison ("Bodison") falsified his report and lied in his testimony. [*Id.*] Plaintiff was again found guilty and sanctioned to the loss of thirty days good time credit and 540 days of canteen, telephone, and visitation privileges, as well as 360 days of disciplinary detention.[2] [*Id.* at 7, ¶ 24.]

Plaintiff alleges he filed Step 1 and Step 2 grievances challenging his conviction and that the conviction and all imposed sanctions were upheld except for the loss of thirty days good time credit.[3] [*Id.* at 7–8, ¶¶ 25–29.] Plaintiff further alleges he has served the

---

[2] As discussed below, Plaintiff's Complaint contains no allegations regarding actions undertaken by Defendants Fred Thompson ("Thompson") and Michael McCall ("McCall").

[3] The Step 1 grievance dated June 11, 2009 was denied, indicating the sanctions imposed were within Agency guidelines. [Doc. 55-10.] The Step 2 grievance was likewise denied, indicating the sanctions imposed, "which included the lo[ss] of **-0-**days accrued good time," were appropriate for the rules violations, and there was no reason found to warrant a reversal of the hearing decision. [Doc 55-11 (emphasis added).] Based on the language in this grievance, the affidavit of Patterson [Doc. 46-2 ¶ 22], and Plaintiff's representation that the sanction of loss of good time credits was not upheld [Doc. 1 at 7–8, ¶ 29; *see also* Doc.

3

imposed sanctions but is being held in SMU on Security Detention ("SD") as a result of the unlawful homicide conviction. [*Id.* at 8, ¶ 30.] Plaintiff claims he "has been and is continuously being deprived of all priv[i]l[e]ges and quality of life in prison living conditions, and loss of the limited liberty enjoyed by prisoners, resulting from his segregated confinement." [*Id.* ¶ 31.] Plaintiff also alleges he has been deprived of most of his personal property, "the opportunity to a lower custody prior to his release from prison," and the ability to work, watch television, associate with other prisoners, receive photos of family and friends, receive newspapers and magazines, and attend educational and vocational programs, outdoor recreational activities, meals with other prisoners, religious services, and mental health programs. [*Id.*] Plaintiff alleges he is suffering atypical and significant hardship as a result of the conviction. [*Id.* ¶ 32.] Plaintiff seeks injunctive relief ordering Patterson to vacate the "(804) homocide" charge from Plaintiff's institutional record and release Plaintiff from SMU; judgment against all Defendants for actual damages in an amount to be determined by the Court; nominal damages; punitive damages against all individual Defendants in an amount to be determined by the Court; the cost of this action; and any further relief the Court deems just and proper. [*Id.* at 9.]

## APPLICABLE LAW

**Liberal Construction of Pro Se Complaint**

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972)

---

55-1 at 3–4 (stating that Plaintiff's appeal of the second hearing decision was dismissed by the Administrative Law Court because Plaintiff did not lose any good time credits); Doc. 55-13 (Administrative Law Court Order of Dismissal)], the Court notes that the loss of good time credits is not at issue in this case.

(per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, a pro se complaint is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means that only if the court can reasonably read the pleadings to state a valid claim on which the complainant could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the complainant's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Requirements for a Cause of Action Under § 1983**

This action is filed pursuant to 42 U.S.C. § 1983, which provides a private cause of action for constitutional violations by persons acting under color of state law. Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Accordingly, a civil action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

Section 1983 provides, in relevant part,

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . ."

5

42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [the plaintiff] of a right secured by the Constitution and laws of the United States;" and (2) that the defendant "deprived [the plaintiff] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (third alteration in original) (citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action" requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments. This fundamental limitation on the scope of constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.

*Id.* (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley,* 145 F.3d 653, 658 (4th Cir. 1998)) (internal citations and quotation marks omitted). Nevertheless, "the deed of an ostensibly private organization or individual" may at times be treated "as if a State has caused it to be performed." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Id.* (quoting *Jackson v. Metro. Edison Co.,* 419 U.S. 345, 351 (1974)). State action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State . . . or by a person for whom the State is responsible" and that "the party charged with the deprivation [is] a person who may fairly be said to be

6

a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). A determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct of which the plaintiff complains.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (1999) (quoting *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982)).

**Summary Judgment Standard**

Rule 56 states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's

position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
>> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>>
>> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION

**Eleventh Amendment Immunity**

Defendants argue Plaintiff's claims must be dismissed as to Defendants in their official capacities because, pursuant to the Eleventh Amendment, in their official capacities,

they are alter egos of the State of South Carolina and are not "persons" amenable to suit under 42 U.S.C. § 1983. [Doc. 46-1 at 2.] The Court agrees.[4]

---

[4] Defendants also argue Plaintiff's Complaint should be dismissed in its entirety because Plaintiff's claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). [Doc. 46-1 at 5–7.] In *Heck*, the Supreme Court held,

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

512 U.S. at 486–87 (footnotes omitted). Subsequently, the Court held that the holding in *Heck* is equally applicable to § 1983 actions for declaratory and monetary relief based on claims that necessarily imply the invalidity of an internal prison disciplinary conviction and sanction affecting the length of an inmate's sentence. *Edwards v. Balisok*, 520 U.S. 641, 648 (1997). The Court further explained in *Muhammad v. Close* that *Heck* does not categorically apply to all suits challenging prison disciplinary proceedings because

> these administrative determinations do not as such raise any implication about the validity of the underlying conviction, and although they may affect the duration of time to be served (by bearing on the award or revocation of good-time credits) that is not necessarily so. The effect of disciplinary proceedings on good-time credits is a matter of state law or regulation, and in this case, the Magistrate Judge expressly found or assumed that no good-time credits were eliminated by the prehearing action [the plaintiff] called in question. His § 1983 suit challenging this action could not therefore be construed as seeking a judgment at odds with his conviction or with the State's calculation of time to be served in accordance with the underlying sentence . . . with the consequence that *Heck*'s favorable termination requirement was inapplicable.

540 U.S. 749, 754–55 (2004) (per curiam). As stated above, Plaintiff did not lose any good time credits as part of his disciplinary sanctions, *supra* note 2, and there is no other indication that the disciplinary sanctions Plaintiff received affect the conviction for which Plaintiff is incarcerated or the length of his sentence. Therefore, the Court holds this action is not barred under *Heck*, and Plaintiff may proceed with his claims under § 1983.

9

The Eleventh Amendment prohibits federal courts from entertaining an action against a state. *See, e.g.*, *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam) (citations omitted); *Hans v. Louisiana*, 134 U.S. 1, 10–11 (1890). Further, Eleventh Amendment immunity "extends to 'arm[s] of the State,' including state agencies and state officers acting in their official capacity," *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996) (alteration in original) (internal citations omitted), because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office . . . [and] is no different from a suit against the State itself," *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted). Therefore, Eleventh Amendment immunity protects state agencies and state officials sued in their official capacity from liability for monetary damages under 42 U.S.C. § 1983. *Id.* As a result, to the extent Plaintiff has alleged claims against Defendants in their official capacities, those claims must be dismissed because Defendants are entitled to immunity pursuant to the Eleventh Amendment.[5]

---

[5] The Court notes Blackwell and Turner are also entitled to qualified immunity with respect to Plaintiff's claims against them implicating their quasi-judicial functions as disciplinary hearing officers. See *Cleavinger v. Saxner*, 474 U.S. 193, 206–07 (1985) (holding prison disciplinary hearing officers are entitled to qualified immunity for their quasi-judicial functions).

Further, the Court notes Plaintiff's Complaint contains no factual allegations regarding allegedly unconstitutional actions undertaken by Patterson, Thompson, or McCall in their individual capacities. To the extent Plaintiff has alleged claims against them under a theory of supervisory liability, Plaintiff's claims fail because there is no doctrine of respondeat superior in § 1983 claims, *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691–94 (1978), meaning defendants are liable in their individual capacities only for their personal wrongdoing or supervisory actions that violated constitutional norms, *see Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994); *see also Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (stating that "liability is personal, based upon each defendant's own constitutional violations" and extending qualified immunity to defendants against whom there were no allegations of personal complicity in one defendant's alleged misrepresentations). Accordingly, Patterson, Thompson, and McCall are entitled to dismissal from this suit because they are immune from suit in their official capacities and Plaintiff failed to allege any personal wrongdoing on the part of these Defendants.

**Remaining Claims**

Defendants contend Plaintiff received adequate due process in his disciplinary hearing, and therefore, they are entitled to summary judgment on Plaintiff's due process claims. [Doc. 46-1 at 11-12.] The Court agrees.[6]

In *Wolff v. McDonnell*, the Supreme Court set out the requirements for due process in prison disciplinary hearings:

---

[6] Defendants also argue Plaintiff has failed to exhaust administrative remedies with respect to any claim involving his SD classification status. [Doc. 49.] Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is defined by each prison's grievance procedure, not the PLRA; a prisoner must comply with his prison's grievance procedure to exhaust his administrative remedies. *Jones v. Bock*, 549 U.S. 199, 218 (2007). Courts within the District of South Carolina have found an inmate exhausts his administrative remedies when he completes Step 2 of the SCDC grievance procedure and that § 1997e(a) does not require inmates to further appeal to South Carolina's Administrative Law Court. *See, e.g.*, *Ayre v. Currie*, No. 05-3410, 2007 WL 3232177, at *7 n.5 (D.S.C. Oct. 31, 2007); *Charles v. Ozmint*, No. 05-2187, 2006 WL 1341267, at *4 (D.S.C. May 15, 2006). Hence, within this District, an inmate's claim is barred unless he completes Step 2 of the SCDC grievance procedure with respect to that claim.

Exhaustion is an affirmative defense; an inmate is not required to plead exhaustion in his complaint. *Jones*, 549 U.S. at 211–12; *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 681 (4th Cir. 2005). However, to survive a motion for summary judgment asserting he failed to exhaust, the inmate is required to produce evidence in response to the motion that refutes the claim that he failed to exhaust. *See Hill v. Haynes*, 380 F. App'x 268, 270 (4th Cir. 2010) (unpublished opinion) (holding that "to withstand a motion for summary judgment, the non-moving party must produce competent evidence sufficient to reveal the existence of a genuine issue of material fact for trial" (citing Fed. R. Civ. P. 56(e)(2))); *see also Celotex*, 477 U.S. at 323–24 (stating that once the party seeking summary judgment demonstrates there is no genuine issue of material fact, the non-moving party, to survive the motion for summary judgment, must demonstrate specific, material facts exist that give rise to a genuine issue).

Here, Defendants argue Plaintiff has not exhausted any claims related to his SD classification because he did not file grievances related to his classification status until after he filed this action. Plaintiff filed this action on July 27, 2010. [Doc. 1 at 2.] According to Defendants, Plaintiff first filed a grievance regarding his placement on SD status on August 19, 2010. [Doc. 49-1 at 11–12, 17.] In response to Defendants' argument that he failed to exhaust any claims with respect to his SD classification, Plaintiff contends that he grieved his continued segregation in 2009 by filing Step 1 and Step 2 grievances. [Doc. 55-1 at 4.] Plaintiff also provided copies of those grievances, which clearly address Plaintiff's SD classification status. [Docs. 55-14, 55-15.] Although this Step 1 grievance challenged Plaintiff's SD classification status prior to the May 18, 2009 disciplinary hearing, which was a re-hearing on Plaintiff's homicide charge originally heard on March 10, 2008, the record reveals Plaintiff's SD classification status was related to the homicide charge in general, not to a specific hearing decision. [*See* Doc. 46-4 at 3, 7–20; Docs. 55-14, 55-15.] Therefore, to the extent Plaintiff makes out a claim based solely on his SD classification status, the Court assumes, without deciding, Plaintiff has exhausted his administrative remedies with respect to that claim.

11

> 1. Giving the prisoner written notice of the charges at least 24 hours before he appears for his disciplinary hearing;
>
> 2. Providing the prisoner a written statement by the fact finder(s) as to the evidence relied on and reasons for the disciplinary action;
>
> 3. Allowing the prisoner to call witnesses and present documentary evidence in his defense, when permitting him to do so will not be an undue hazard to institutional safety or correctional goals;
>
> 4. Permitting the prisoner the aid of a fellow prisoner, or if that is forbidden, aid from staff or a competent inmate designated by staff, if the prisoner is illiterate or the complexity of the issue makes it unlikely that the prisoner will be able to collect and present the evidence necessary for an adequate comprehension of the case; and
>
> 5. Providing impartial fact finders.

418 U.S. 539, 563–76 (1974). A review of the record reveals that the due process requirements stated in *Wolff* were observed in this case. To begin, Plaintiff's major contention is that he was denied due process because he requested the presence of certain witnesses and to present documentary evidence but his request was denied. [Doc. 1 at 6, ¶¶ 20, 22–23; *see* Doc. 55-7 (Request to Staff form requesting witnesses).] The failure to permit live testimony is harmless when the witness's written statement was considered by the decision maker and the plaintiff has failed to demonstrate that he was harmed by the witness testifying in writing rather than in person. *See Brown v. Braxton*, 373 F.3d 501, 508 (4th Cir. 2004). Here, the record is clear that all the witnesses Plaintiff requested to appear in person had either given statements to or were interviewed by SLED and the SLED report provided a synopsis of the statements [Doc 46-3 at 3–12], and Plaintiff states he had a copy of the report at the disciplinary hearing [Doc. 30 at 2–3; Doc. 30-1]. Further, Plaintiff has failed to demonstrate that he was harmed by the hearing officer's use of the SLED report rather than live witness testimony; rather, Plaintiff basically states that

12

the witnesses would have testified to the same information contained in the SLED report.[7] [*See* Doc. 55-1 at 10–11.] Therefore, to the extent he was required to allow Plaintiff to call witnesses, the Court concludes it was harmless error for the hearing officer to deny Plaintiff's request to call witnesses.[8]

In his Complaint, Plaintiff contends Bodison falsified his report and lied in his testimony. [Doc. 1 at 6, ¶ 23.] In his cross-motion for partial summary judgment, Plaintiff also contends Turner was an impartial fact finder because Turner reviewed the evidence prior to the disciplinary hearing and had already made up his mind, rushed Plaintiff through his defense, and made statements at the hearing that he did not care whether or not Plaintiff understood. [Doc. 55-1 at 12–13.] The Court finds these unsupported allegations fail to demonstrate a genuine issue of material fact as to whether Plaintiff was provided an impartial fact finder.

Finally, Plaintiff has not argued that he was not provided the other due process requirements stated in *Wolff*—namely, at least twenty-four hours notice of the charges, a written statement by the fact finder(s) as to the evidence relied on and reasons for the disciplinary action, and the aid of a fellow prisoner or a staff member at the hearing because of Plaintiff's illiteracy or the complexity of the issues involved. The record reveals these due process requirements were satisfied. Plaintiff received notice of the charge at

---

[7] Plaintiff also alleges Defendant Blackwell disregarded Plaintiff's evidence and testimony and did not enter them into the record. [Doc. 1 at 4, ¶ 8.] Plaintiff has offered no support for this allegation and, therefore, has failed to demonstrate a genuine issue of material fact exists as to whether Blackwell violated Plaintiff's due process rights.

[8] While Plaintiff asserts Defendant Turner denied Plaintiff's request to produce documentary evidence on his behalf to prove his innocence [Doc. 1 at 6, ¶ 23], there is no evidence of this request, what documents he intended to introduce, or how the documents would prove his innocence. Accordingly, the Court finds Plaintiff has failed to demonstrate a genuine issue of material fact as to whether Turner violated Plaintiff's due process rights with respect to the introduction of documentary evidence at the disciplinary hearing.

least twenty-four hours prior to the hearing. [Doc. 1 at 5–6, ¶¶ 19, 21 (alleging Plaintiff received notice of the charge on May 15, 2009, and a hearing on the charge was held on May 18, 2009); Doc. 46-3 at 1 (disciplinary report and hearing record reflecting Plaintiff received notice on May 15, 2009, and the hearing was held on May 18, 2009).] Plaintiff received a written statement of the hearing officer's decision, which included a statement of the evidence relied on and the reasons for the disciplinary action. [Doc. 46-3 at 1.] Lastly, nothing in the record indicates Plaintiff is illiterate or the issues involved in his disciplinary action were particularly complex, and Plaintiff's prosecution of this action suggests he is not illiterate and was capable of proceeding at his disciplinary hearing without aid.

Further, under the Supreme Court's decision in *Sandin v. Conner*, the limited right of due process is required only in an inmate disciplinary action that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." 515 U.S. 472, 484 (1995). Within the Fourth Circuit Court of Appeals, courts have held that the following sanctions do *not* constitute "atypical and significant hardship": disciplinary detention, segregated confinement, the loss of the inmate's prison job, the denial of permission to participate in work release, and the loss of canteen, visitation, and phone privileges. *See Kitchen v. Upshaw*, 286 F.3d 179, 189 (4th Cir. 2002); *Williams v. Farrior*, 334 F. Supp. 2d 898, 904 & n.9 (E.D. Va. 2004). Assignment to disciplinary or administrative segregation does not implicate Fourteenth Amendment due process rights, and segregation is not per se cruel and unusual punishment under the Eighth Amendment. *See Allgood v. Morris*, 724 F.2d 1098, 1101 (4th Cir. 1984) (addressing segregated protective custody); *Ross v. Reed*, 719 F.2d 689, 697 (4th Cir. 1983) (addressing

administrative segregation). Consequently, no constitutionally protected liberty interest is implicated in Plaintiff's placement in disciplinary detention for 360 days, or in Plaintiff's loss of canteen, telephone, and visitation privileges for 540 days. *See Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997); *Reffitt v. Nixon*, 917 F. Supp. 409, 413 (E.D. Va. 1996). Therefore, with respect to Plaintiff's due process claims, the Court recommends Defendants' motion for summary judgment be granted and Plaintiff's cross-motion for partial summary judgment be denied.

## RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that Defendants' motion for summary judgment [Doc. 46] be GRANTED and Plaintiff's cross-motion for partial summary judgment [Doc. 55] be DENIED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin<br>
United States Magistrate Judge

November 30, 2011
Greenville, South Carolina